UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Eric Dickner

    v.                                            Civil No. 07-cv-120-PB

Governor of New Hampshire, and
United States Marshal for the
District of New Hampshire


**REPORT AND RECOMMENDATION**

Before the Court is Eric Dickner's petition for a writ of error coram nobis (document no. 1). Because Dickner is filing pro se and in forma pauperis, the matter is before me for preliminary review to determine, among other things, whether the petition states any claim upon which relief might be granted. See United States District Court for the District of New Hampshire Local Rule ("LR") 4.3(d).

Standard of Review

Under this Court's local rules, when an individual plaintiff an action pro se and in forma pauperis, the magistrate judge is directed to conduct a preliminary review. LR 4.3(d). In conducting the preliminary review, the Court construes pro se pleadings liberally, however inartfully pleaded. See Erickson v.

Pardus, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972) to construe pro se pleadings liberally in favor of the pro se party). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." See Castro v. United States, 540 U.S. 375, 381 (2003) (noting that courts may construe pro se pleadings so as to avoid inappropriately stringent rules and unnecessary dismissals of claims); Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997) (same). All of the factual assertions made by a pro se plaintiff and inferences reasonably drawn therefrom must be accepted as true. See id. This review ensures that pro se pleadings are given fair and meaningful consideration.

## Background

According to the facts alleged in Dickner's petition, on November 19, 2004, Eric Dickner was at home with his father when, in an effort to commit suicide, Dickner's father threw himself down a flight of stairs, receiving injuries that resulted in his death later that evening. Dickner was arrested and charged with

manslaughter for his father's death.  On February 18, 2005, Dickner was indicted by a Merrimack County grand jury on one count of manslaughter.  Dickner plead not guilty.

Dickner was adjudged mentally incompetent by the State courts, and was involuntarily committed to the custody of the Secure Psychiatric Unit ("SPU"), located on the grounds of the New Hampshire State Prison, in order that his mental competence might be "restored."  The criminal indictment against Dickner was dismissed as a result of his civil commitment.  Dickner's commitment can be periodically renewed, indefinitely, should Dickner fail to regain mental competence.

Dickner alleges that he was denied the right to a jury trial when the State, rather than prosecute him criminally, had him involuntarily committed on the basis of mental incompetence.  Dickner claims his attorneys advised him that his only alternative to having the State seek involuntary commitment was for Dickner to commit himself to a mental institution voluntarily for a year, and then to seek a trial on the basis of restored mental competence after the expiration of his self-imposed commitment.  Dickner refused to do that, as he does not agree that he is mentally incompetent.  Dickner believes that the State

sought his involuntary commitment in an effort not to lose a criminal trial, because, upon the development of the criminal case, it became clear that Dickner was innocent of manslaughter.

Based on the State court finding of mental incompetence, the State has sought and obtained guardianship of Dickner. This enables the State to forcibly medicate Dickner with psychotropic drugs in an effort to restore his mental competence. Dickner states that he is appealing the guardianship determination and that his appeal is pending in the New Hampshire Supreme Court.

Dickner also complains that during his pretrial detention at the Merrimack County House of Correction ("MCHC"), as well as during his stay at the SPU, he has been subjected to harassment. Specifically, Dickner claims that MCHC and SPU staff members have, among other things, interfered with or taken his legal materials[1], have endangered his life by encouraging other SPU residents, who are largely convicted criminals, to kill or rape Dickner during his incarceration, and have attempted to brainwash him by directing inmates to repeatedly utter various phrases

---

[1]Dickner claims that he began to work on a petition for a writ of habeas corpus to file in this Court on March 18, 2007, and that on March 19, 2007, after having left his cell for one hour, he returned to find that his papers had been moved. Two days later, he noticed that some of his paperwork was missing.

outside of Dickner's cell door. Dickner has submitted written grievances regarding the conditions of his confinement to both the Commissioner of the New Hampshire Department of Corrections and the Governor of New Hampshire.

Dickner now requests that this Court issue a writ of error coram nobis, or, alternatively, a writ of mandamus. Dickner further requests that this Court direct the United States marshal to transport him to a federal institution outside of New Hampshire in order to protect the integrity of his legal challenges to the authority of the State of New Hampshire. Finally, Dickner seeks an order preventing the New Hampshire Governor, in his representative capacity for the State of New Hampshire, from exercising the State's guardianship over Dickner prior to the resolution of all of Dickner's legal issues in this Court.

## Discussion

I.  Construction of the Action

As stated above, Dickner has requested the issuance of a writ of error coram nobis[2] or, in the alternative, a writ of

---

[2] A writ of error coram nobis acts to correct a factual error, where the correction would serve to modify or vacate a prior judgment of this Court, because the error is material to the validity and regularity of the legal proceeding before this

mandamus[3].  Dickner invokes this Court's power to grant the relief requested pursuant to 28 U.S.C. § 1651(a), the "All Writs" section of the Judicial Code.  Dickner seeks a finding that his confinement pursuant to his involuntary commitment violates his constitutional rights, he also seeks a transfer to a federal institution, an injunction barring the enforcement of the State court's guardianship determination, and further relief based on the allegedly unconstitutional conditions of his confinement.

At common law, the writ of coram nobis was available to correct errors of fact.  United States v. Morgan, 346 U.S. 502, 507 (1954).  Although this court retains the power to grant such

---

court.  Black's Law Dictionary 362 (8th ed. 2004).

[3] 28 U.S.C. § 1361 grants federal district courts original jurisdiction in an action in the nature of mandamus to compel an officer or employee of the United States to perform a duty owed to the plaintiff.  Section 1361 does not, however, vest a district court with jurisdiction to issue a "writ of mandamus," which "has traditionally been used in the federal courts only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 35 (1980) (internal quotation omitted).  Dickner here has requested a "writ of mandamus" seeking this Court's exercise of supervisory or superior authority over the State courts to decide questions concerning Dickner's confinement.  State courts are not "inferior" courts to federal district courts and have no authority to review final judgments of state courts in judicial proceedings.  D.C. Ct. App. v. Feldman, 460 U.S. 462, 482 (1983).  Therefore, I will not consider Dickner's requested alternative relief of a writ of mandamus.

relief in criminal cases, the writ has been expressly abolished by Rule 60(b) of the Federal Rules of Civil Procedure in civil cases.  See Morgan, 346 U.S. at 505 n.4.  Further, 28 U.S.C. § 1651(a) "is a residual source of authority to issue writs that are not otherwise covered by statute.  Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling."  Pa. Bureau of Corr. v. U.S. Marshals Serv., 474 U.S. 34, 43 (1985); accord Carlisle v. United States, 517 U.S. 416 (1996) (dealing specifically with the availability of coram nobis).

   Dickner's petition, to the extent it seeks a finding that his custody pursuant to a civil commitment proceeding is unconstitutional, is actually a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  To the extent that Dickner seeks to enjoin the Governor, or the State of New Hampshire, from exercising guardianship over him, the petition seeks a collateral review of a State court judgment currently pending in the New Hampshire Supreme Court.  Insofar as Dickner seeks to compel the United States Marshal to take custody of him, and effect his transfer to a federal facility, I find that this petition arises under the Mandamus and Venue Act, codified at 28

U.S.C. § 1361.  Finally, Dickner's challenges to the conditions of his confinement are properly construed as civil rights claims actionable pursuant to 42 U.S.C. § 1983.  I will address each of these potential causes of action in turn.

II.  <u>Petition for a Writ of Habeas Corpus</u>

An individual whom the State seeks to have involuntarily committed due to his mental incompetence is entitled to due process of law in the commitment proceedings under the Fourteenth Amendment to the United States Constitution.  <u>See</u> <u>Vitek v. Jones</u>, 445 U.S. 480, 491-94 (1980).  Where, as here, an individual alleges that he was not afforded adequate due process during the proceedings resulting in his commitment, such an action is cognizable as a federal habeas petition under 28 U.S.C. § 2254.

I am inclined to construe this action, therefore, as a petition for a writ of habeas corpus.  The habeas statute, however, almost entirely prevents a petitioner from filing more than one habeas action to challenge the constitutionality of his confinement.  <u>See</u> 28 U.S.C. § 2244(a).  Petitioner has indicated here that he intends to file a federal petition for a writ of habeas corpus raising a number of substantive challenges to his civil commitment and confinement that are not raised in this

petition.[4]  Accordingly, in an Order issued simultaneously with this Report and Recommendation, I will provide Dickner with the opportunity to amend his petition to include any additional habeas claims he wishes to present to this Court.

Dickner should consider two additional restrictions on his ability to petition this Court for a writ of habeas corpus. First, § 2254 requires that Dickner exhaust all of his State court remedies for each of the federal claims raised in his federal habeas petition before pursuing his habeas claims here. See ADelson v. DiPaola, 131 F.3d 259, 261 (1st Cir. 1997) (explaining the exhaustion principle and holding that a federal court will not entertain an application for habeas relief unless the petitioner first has fully exhausted his State remedies with respect to each claim raised in the federal habeas petition).  A petitioner's remedies in New Hampshire are exhausted when the

---

[4]Specifically, Dickner's petition indicates that he intends to file a petition for a writ of habeas corpus in this Court challenging: (1) the use of a coerced confession against him, (2) the violation of his privilege against self-incrimination, (3) the failure of the prosecution to produce exculpatory evidence, (4) the ineffective assistance of his counsel, (5) the denial of his right to appeal, (6) the denial of a neutral magistrate, (7) unconstitutional conditions of his confinement, (8) "unconstitutional law," (9) the denial of his right to represent himself pro se, and (10) "infractions of the law by the State of New Hampshire."  I offer no comment on the merits of any of these claims as they are not currently before the Court.

State's highest court has had an opportunity to rule on the petitioner's federal constitutional claims. See Lanigan v. Maloney, 853 F.2d 40, 42 (1st Cir. 1988) ("habeas corpus petitioner must have presented the substance of his federal constitutional claim to the State appellate courts so that the State had the first chance to correct the claimed constitutional error"); see also Picard v. Connor, 404 U.S. 270, 275 (1971) (requiring petitioner to have fairly presented the federal nature of his claims to the State courts to give them the first opportunity to remedy the claimed constitutional error). Because it appear's that Dickner's petition contains claims that are currently unexhausted, were Dickner to press his petition without first exhausting all of the claims contained therein, I would have to recommend dismissal of the entire petition. See Novaczyk v. Warden, N.H. State Prison, 299 F.3d 69, 75 (1st Cir. 2002) (citing Rose v. Lundy, 455 U.S. 509, 513-21 (1982)).

Second, Dickner should be aware that the habeas statute sets a one-year limitations period for filing federal habeas petitions. 28 U.S.C. § 2244(d)(1). The one-year limit runs from the time that the State court judgment confining an individual becomes final by the conclusion of direct review or the

expiration of the time for seeking such review.  28 U.S.C. § 2244(d)(1)(A).  In this case, it appears that sometime on or about December 7, 2006, the indictment against Dickner was dismissed because, at that point, Dickner had been involuntarily committed and confined on the basis of mental incompetence.  Dickner has the right to appeal that decision to the New Hampshire Supreme Court and then to seek review of that Court's decision by petitioning for a writ of certiorari in the United States Supreme Court.  If no direct appeal or other petition was filed, the one-year limit set by the habeas statute for filing this petition began to run after the period for direct review of the judgment committing him expired.

Statutory exceptions to the one-year limitations period exist where an untimely filing was caused by the State, by new constitutional rights created by the Supreme Court, or newly discovered facts underpinning a claim.  See David v. Hall, 318 F.3d 343, 344 (1st Cir. 2003); 28 U.S.C. § 2244(d)(1)(B)-(D).  The habeas statute further excludes from the one-year limitations period "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to

the pertinent judgment or claim is pending . . .."  28 U.S.C. § 2244(d)(2).

In my Order issued simultaneously with this Report and Recommendation, I direct Dickner to amend his petition to include, for the claim currently presented in this petition and each claim he seeks to add to this petition, documentation, such as motions, petitions, notices of appeal, briefs, or other pleadings showing that the issues presented here, including the precise federal nature of the issues, were in fact presented to the State courts for consideration.  See Smith v. Digmon, 434 U.S. 332, 333 (1978) (listing documents which would enable a federal court to determine whether the grounds supporting the habeas petition had been presented for review in the State courts).  Because it appears Dickner may have to return to the State courts to fully present these claims in those courts before he can make the required amendment to his current petition, I will authorize, upon Dickner's request, a stay in these proceedings to allow Dickner to exhaust his claims and amend his petition.  See Rhines v. Weber, 544 U.S. 269, 278 (2005) (a district court should stay a mixed petition containing both exhausted and unexhausted claims if the petitioner "had good

cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."); see also Duncan v. Walker, 533 U.S. 167, 182-83 (2001) (Stevens, J., concurring) ("[T]here is no reason why a district court should not retain jurisdiction over a meritorious claim and stay further proceedings pending the complete exhaustion of state remedies."); Delaney v. Matesanz, 264 F.3d 7, 14 n.5 (1st Cir. 2001) (recommending staying exhausted claims where "there is a realistic danger that a second petition, filed after exhaustion has occurred, will be untimely").

Liberally construing the petition, I find that while petitioner has not at this time made a specific showing of good cause for his failure to exhaust all of his claims, he has demonstrated a substantial effort to litigate his claims in State court and, being a *pro se* litigant who has been previously deemed mentally incompetent, it stands to reason that Dickner may simply not have realized the necessity of raising each ground that he seeks to present here in the State courts within the applicable limitations period. See Rhines, 544 U.S. at 279 (Stevens, J., concurring) (the "good cause" requirement should not be read "to

impose the sort of strict and inflexible requirement that would trap the unwary *pro se* prisoner." (internal citation omitted)); see also id. (Souter, J., concurring) (*pro se* habeas petitioners do not come well trained to address tricky exhaustion determinations).[5]  I further find that there is nothing before the Court to indicate that "the petitioner engaged in intentionally dilatory litigation tactics" either in pursuing his claims in the State courts or in this Court.  Id. at 270.

The facts here do not specify precisely when the civil commitment in this case was ordered, or when that order became final either by the completion of direct review or the expiration of the period for seeking direct review.  Accordingly, Dickner would be well-advised to act promptly to amend his current petition to include each of his claims, and to then immediately seek a stay of this matter should he have to return to the State courts to exhaust his claims.  Dickner's State court litigation

---

[5] It may also be the case that Dickner has raised some or all of his federal claims in State court pleadings that have not yet been brought to the attention of this Court.  If that is the case, then Dickner need only amend his current petition to demonstrate such exhaustion for each claim Dickner wishes to pursue, which would render a stay in this matter unnecessary.  The Court could then promptly proceed to determine the merits of Dickner's claims.

should commence immediately upon this Court's stay of this petition.

B.   Injunction Barring State from Guardianship

Dickner seeks an injunction directing the Governor, as a representative of the State of New Hampshire, not to seek to obtain or maintain guardianship of Dickner during the pendency of this action.  Dickner states that the State court judgment awarding guardianship of him to the State is currently on appeal to the New Hampshire Supreme Court.  Accordingly, I find that this Court should not consider this request under the abstention doctrine outlined in Younger v. Harris, 401 U.S. 37, 43-44 (1971).

The Younger abstention principle provides that federal courts should abstain from entertaining cases involving issues that are the subject of currently pending State judicial proceedings when: (1) there is an ongoing State proceeding which is judicial in nature; (2) important State interests are involved; and (3) the plaintiff will have an adequate opportunity in the State proceeding to raise the constitutional challenges presented by the federal law suit.  Id.; Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431-32 (1982)

(applying the abstention defined in Younger, a criminal case, to civil cases); Brooks v. N.H. Sup. Ct., 80 F.3d 633, 638 (1st Cir. 1996). "Except in the most extraordinary cases, a federal court must presume that state courts, consistent with the imperatives of the Supremacy Clause, see U.S. Const. art. VI, are fully competent to adjudicate federal constitutional and statutory claims properly presented by the parties." Casa Marie, Inc. v. Super. Ct., 988 F.2d 252, 262 (1st Cir. 1993). Federal court intervention can be countenanced only where a plaintiff can show there is no opportunity to raise the federal issues in a State court, a State statute under attack is "flagrantly and patently violative of express constitutional prohibitions in every clause," or plaintiffs can show "bad faith, harassment, or any other unusual circumstances that would call for equitable relief." Younger 401 U.S. at 53-54.

In this case, it is unquestionable that decisions about guardianship and the mental competence of New Hampshire citizens are vital matters of State interest. Further, none of the facts alleged by Dickner suggest that he has been denied an adequate opportunity in the State courts to adjudicate all of the issues that he seeks to raise in this challenge to his guardianship.

While Dickner claims that he was denied the relief he sought in the State court proceedings, he does not allege that he was unable to fully litigate the propriety of those decisions in the State court system.  To the contrary, Dickner asserts that he is currently litigating those issues in an appeal before the New Hampshire Supreme Court.  Accordingly, I find that this claim falls squarely within that category of matters from which this Court should abstain under <u>Younger</u>, and I recommend, therefore, that the request to enjoin the enforcement of the guardianship determination be denied.

    C.   <u>The Mandamus and Venue Act</u>

The Mandamus and Venue Act, codified at 28 U.S.C. § 1361, vests the United States District Court with original jurisdiction in any action to compel an officer or employee of the United States or any federal agency, to perform a duty owed to the plaintiff.  The action seeking to compel such a performance is called a complaint in the nature of mandamus.

"There can be no mandamus action if no 'duty' exists on the part of the defendant[].  On the other hand, if a duty does exist, then not only is there jurisdiction under § 1361 but plaintiff has also adequately stated a claim in asking that such

17

duty be fulfilled." Davis Assocs. v. Sec'y, HUD, 498 F.2d 385, 388 (1st Cir. 1974). Here, the § 1361 action by Dickner necessarily relies on an assertion that the United States Marshal has a duty to take Dickner into federal custody in order to protect his ability to file federal legal actions without interference from State custodial officers. Dickner offers no facts to support the allegation that the United States Marshal has any such duty. Dickner is involuntarily committed in the State of New Hampshire by the courts of that State. Dickner is not in federal custody and the federal government has taken no action to restrain Dickner's freedom or otherwise obtained responsibility for Dickner's confinement. In short, there is no allegation made by Dickner that gives rise to any duty owed to him by the United States Marshal, or any other federal actor, whatsoever. Accordingly, Dickner's § 1361 action necessarily fails, and I recommend that it be dismissed, and that the United States Marshal be dismissed as a defendant to this action.

D.  Section 1983 Claim

To the extent that Dickner seeks to state a claim challenging the allegedly unconstitutional conditions of his confinement, it must be brought by filing a separate civil rights

action under 42 U.S.C. § 1983.  Such claims are not properly raised in a habeas petition, as habeas relief is only available to challenge the fact or length of the confinement.  <u>Preiser v. Rodriquez</u>, 411 U.S. 475, 489-99 (1973); <u>Wolff v. McDonnell</u>, 418 U.S. 539, 554 (1974).  Accordingly, I recommend that the claim alleging unconstitutional conditions of confinement be dismissed without prejudice to being refiled in a separate action brought under § 1983.

<u>Conclusion</u>

For the reasons set forth above, I recommend that Dickner's request to enjoin the enforcement of the State court's guardianship determination be denied.  I further recommend that any intended claims alleged pursuant to 28 U.S.C. § 1361 or 42 U.S.C. § 1983 be dismissed from this action.

I also recommend that this action be construed as a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging Dickner's confinement pursuant to an involuntary civil commitment.  In my Order issued simultaneously with this Report and Recommendation, I direct Dickner to amend his petition to include all of his federal habeas claims and to demonstrate exhaustion of those claims.  I further direct Dickner to

immediately request a stay of these proceedings, if necessary, and to immediately commence such State court proceedings as are necessary to exhaust the federal claims asserted in this habeas petition.

Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See <u>Unauthorized Practice of Law Comm. v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

/s/ James R. Muirhead
James R. Muirhead
United States Magistrate Judge

Date:   September 28, 2007

cc:     Eric Dickner, pro se